UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                               :

UNITED STATES OF AMERICA         :      Criminal No.
                               :

          v.                 :      Filed:
                               :

BNP PARIBAS USA, INC.,        :      Violation: 15 U.S.C. § 1
                               :

               Defendant.     :
------------------------------------------------------------x

## PLEA AGREEMENT

The United States of America and BNP Paribas USA, Inc. ("defendant"), a U.S. banking and financial services holding company organized and existing under the laws of Delaware, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").  The defendant was, during the Relevant Period (defined in paragraph 4 below), named Paribas North America, Inc., and was the U.S. holding company for the U.S. Corporate and Investment Banking operations of BNP Paribas S.A., the Paris-based parent company.  The defendant was designated as the intermediate holding company for the U.S. businesses of BNP Paribas S.A. as required by the Federal Reserve's Regulation YY in July 2016, after the Relevant Period, and at such time and thereafter elected its current independent directors.

## RIGHTS OF DEFENDANT

1.     The defendant understands its rights:

     (a)     to be represented by an attorney;

     (b)     to be charged by Indictment;

     (c)     as a corporation organized and existing under the laws of Delaware, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Southern District of New York;

     (d)     to plead not guilty to any criminal charge brought against it;

(e)      to have a trial by jury, at which it would be presumed not guilty of the

charge and the United States would have to prove every essential element of the charged

offense beyond a reasonable doubt for it to be found guilty;

(f)      to confront and cross-examine witnesses against it and to subpoena

witnesses in its defense at trial;

(g)      to appeal its conviction if it is found guilty; and

(h)      to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in

subparagraphs 1(b)-(g) above.  The defendant also knowingly and voluntarily waives the right to

file any appeal, any collateral attack, or any other writ or motion, including but not limited to an

appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that

sentence is consistent with or below the Recommended Sentence in Paragraph 9 of this Plea

Agreement, regardless of how the sentence is determined by the Court.  For purposes of the

waiver of appeal, the sentence imposed is deemed consistent with or below the Recommended

Sentence in Paragraph 9 even if the sentence imposed includes a term of probation if it is

otherwise consistent with or below the Recommended Sentence in Paragraph 9, unless the term

of probation exceeds the length authorized by 18 U.S.C. § 3561(c).  This agreement does not

affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c).

Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal

remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective

assistance of counsel or prosecutorial misconduct.  The defendant agrees that there is currently

no known evidence of ineffective assistance of counsel or prosecutorial misconduct.  Pursuant to

Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count

Information to be filed in the United States District Court for the Southern District of New York.

The Information will charge the defendant with entering into and engaging in a combination and

conspiracy to suppress and eliminate competition by fixing prices for Central and Eastern European, Middle Eastern, and African ("CEEMEA") currencies traded in the United States and elsewhere, from at least as early as September 2011 and continuing until at least July 2013, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     For purposes of this Plea Agreement, the "Relevant Period" is that period from at least as early as September 2011 and continuing until at least July 2013.

(b)     The foreign currency exchange ("FX") market is a global market in which participants trade currencies, in pairs.  In a currency pair, each currency is valued relative to the other.  The ratio that expresses the value of one currency to the other is referred to as the "exchange rate," "rate," or simply "price."  Trading in CEEMEA currencies typically involves exchanging one CEEMEA currency, such as the South African Rand ("ZAR"), for a non-CEEMEA currency, such as the U.S. Dollar ("USD").  In the currency pair USD/ZAR, USD is referred to as the "base" currency and ZAR is referred to as the "counter" currency.  Prices are quoted in terms of how many units of the counter currency are required in exchange for a stated amount of the base currency.

(c)     FX transactions include "spot" transactions, in which the exchange of currencies occurs typically within two days of the trade date, and "forward" transactions, in which the exchange of currencies occurs on a more distant, agreed-upon date following the trade date.

3

(d)      FX dealers, also known as FX market makers, are financial institutions that quote prices to buy and sell currencies to customers looking to trade.  Customers include corporations, hedge funds, pension funds, and other entities, located in New York, other states, and in foreign countries, that want to exchange large amounts of one currency into an equivalent amount of another currency.  Prices for such transactions are typically conveyed to these customers in the form of a "two-way price" quote, comprised of the "bid" (the price at which the FX dealer will buy the base currency) and the "offer" (the price at which the FX dealer will sell the base currency).

(e)      One category of customer order is an order to buy or sell a specific amount of currency at the price quoted by the FX dealer.  Another category of customer order is a "fix" order, where the order is to buy or sell a specific amount of currency at a benchmark rate to be determined subsequently.  "Fixes" establish such benchmark rates by generating a snapshot of the price of a currency pair based on market activity for that currency pair occurring within a predetermined, and short, window of time.   A third category of customer order is known as a "limit" order.  In a limit order, a customer places an order to buy or sell a particular currency only if the market price of that currency reaches or exceeds a set price level.

(f)      Once the FX dealer and the customer agree on price for a particular type of customer order, the FX dealer then assumes the risk of an unfavorable movement in price of the quoted currency pair that might occur between the time the FX dealer and the customer enter into their trade and when the FX dealer is able to fill or offset that customer trade in what is known as the "interdealer market."  Interdealer trades can be executed directly between competing FX dealers, through brokers, or on electronic FX trading platforms.

(g)      During the Relevant Period, the defendant and certain of its Related Entities, as defined in Paragraph 16 of this Plea Agreement, employing more than 5,000

individuals worldwide, acted as an FX dealer, in the United States and elsewhere, for CEEMEA currencies, and for both spot and forward transactions.

(h)     During the Relevant Period, the defendant and its corporate co-conspirators, which were also financial institutions acting as competing FX dealers, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices for CEEMEA currencies traded in the United States and elsewhere.  The defendant, through one of its CEEMEA traders, participated in the conspiracy from at least as early as September 2011 and continuing until at least July 2013.

(i)     In furtherance of the conspiracy, the defendant and its co-conspirators engaged in communications, including near daily conversations, through private chat rooms, phone calls, text messages, other personal cell phone applications, and in-person meetings within the Southern District of New York, among other means of communication.

(j)     The defendant and its co-conspirators carried out the conspiracy to suppress and eliminate competition in CEEMEA currencies by various means and methods, including by: (i) agreeing to enter into non-bona fide trades among themselves on an electronic FX trading platform, for the sole purpose of manipulating prices; (ii) agreeing to subsequently cancel these non-bona fide trades, or to offset them by entering into equivalent trades in the opposite direction, in a manner designed to hide such actions from other FX market participants; (iii) coordinating on the price, size, and timing of their bids and offers on an electronic FX trading platform in order to manipulate prices on that and other electronic FX trading platforms; (iv) agreeing to refrain from trading where one or more of the co-conspirators had a stronger need to buy or sell than the others, in order to prevent the co-conspirators from bidding up the price or offering down the price against each other; (v) coordinating their trading prior to and during fixes in a manner

intended to manipulate final fix prices; (vi) coordinating their trading in order to move pricing through their customers' limit order levels; (vii) agreeing on pricing to quote to specific customers; and (viii) employing measures to hide their coordinated conduct from customers as well as other FX market participants, including by using code names for specific customers, communicating by personal cell phone applications instead of on recorded business phone lines, and concealing the existence of trades entered into solely to manipulate prices, among other steps.

(k)     During the Relevant Period, the business activities of the defendant and its co-conspirators that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and U.S. import trade and commerce.  The defendant and its co-conspirators filled substantial quantities of CEEMEA customer orders, and traded substantial quantities of CEEMEA currencies in the interdealer market, with customers and counterparties located in New York, in other states, and in foreign countries, in a continuous and uninterrupted flow of interstate and U.S. import trade and commerce. The defendant and its co-conspirators also caused substantial payments for FX transactions to travel in interstate and U.S. import trade and commerce.

(l)     Acts in furtherance of the charged offense were carried out within the Southern District of New York and elsewhere.

## ELEMENTS OF THE OFFENSE

5.     The elements of the charged offense are that:

(a)     the conspiracy described in the Information existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy described in the Information either substantially affected interstate and U.S. import commerce in goods or services or occurred within the flow of interstate and U.S. import commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendant understands that:

(a)     pursuant to §8D1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines")  or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)      pursuant to U.S.S.G. §8B1.1 or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed.  The parties agree there is no *ex post facto* issue under the November 1, 2016 Guidelines Manual.  The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence.  The defendant

7

understands that the Court will make Guidelines determinations by applying a standard of preponderance of the evidence.  The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and continuing cooperation of the defendant and its Related Entities, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence within the applicable Guidelines range requiring the defendant to pay to the United States a criminal fine of $90 million, payable in full before the fifteenth (15th) day after the date of judgment, and no order of restitution (the "Recommended Sentence").  The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the Recommended Sentence set forth in this Plea Agreement is reasonable.

(a)      The defendant understands that the Court will order it to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(b)      In light of the availability of civil causes of action, as evidenced by civil cases already filed against certain of the defendant's Related Entities, including *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789-LGS (S.D.N.Y.), the Recommended Sentence does not include a restitution order for the offense charged

in the Information.  If the Court rejects the recommendation for no order of restitution, the United States and the defendant agree that this plea agreement, except for subparagraph 15(b) below, will be rendered void and the defendant will be free to withdraw its guilty plea as provided in subparagraph 15(b).

(c)     Both parties will recommend that no term of probation be imposed in this case, in considering, among other factors, the substantial efforts to address the defendant's and its Related Entities' compliance and remediation program to prevent recurrence of the charged offense, and the five-year term of probation imposed upon BNP Paribas S.A. on May 1, 2015 in the unrelated case of *United States v. BNP Paribas S.A.*, 14-cr-460-LGS (S.D.N.Y.).  The defendant understands that the Court's denial of this request will not void this Plea Agreement.

(d)     The defendant agrees to waive its right to the issuance of a Presentence Investigation Report pursuant to Fed. R. Crim. P. 32 and the defendant and the United States agree that the information contained in this Plea Agreement and the Information may be sufficient to enable the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, pursuant to Fed. R. Crim. P. 32(c)(1)(A)(ii).  Except as set forth in this Plea Agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments.

10.     The defendant and its Related Entities shall further strengthen their compliance and internal controls as required by the Federal Reserve, the New York Department of Financial Services, and any other regulatory or enforcement agencies that have addressed the conduct set forth in Paragraph 4 (h)-(j) above, and provide a report to the United States one year after execution of this agreement, and thereafter upon the United States' request, regarding their remediation and implementation of any compliance program and internal controls, policies, and procedures that relate to the conduct described in Paragraph 4 (h)-(j) above.  Moreover, the defendant agrees that it has no objection to any regulatory agencies providing to the United

States any information or reports generated by such agencies or by the defendant or its Related Entities relating to conduct described in Paragraph 4 (h)-(j) above.  Such information and reports will likely include proprietary, financial, confidential, and competitive business information, and public disclosure of the information and reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the objective of the United States in obtaining such reports.  For these reasons, among others, the information and reports and the contents thereof are intended to remain and shall remain nonpublic, except as otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of the United States' discharge of its duties and responsibilities or is otherwise required by law.

11.     For a period of three years from the date of execution of this Plea Agreement, the defendant shall report to the Antitrust Division all credible information regarding criminal violations of U.S. antitrust laws by the defendant, its Related Entities, or any of their employees as to which the defendant's or its Related Entities' boards of directors, management (that is, all supervisors within the bank), or legal and compliance personnel are aware.

12.     For a period of three years from the date of execution of this Plea Agreement, the defendant shall bring to the Antitrust Division's attention all federal criminal investigations in which the defendant or any of its Related Entities is identified as a subject or a target, and all administrative or regulatory proceedings or civil actions brought by any federal or state governmental authority in the United States against the defendant, its Related Entities, or their employees, to the extent that such investigations, proceedings, or actions allege facts that could form the basis of a criminal violation of U.S. antitrust laws.

13.     The defendant intends to file an application for a prohibited transaction exemption with the United States Department of Labor ("Department of Labor") requesting that the defendant and its Related Entities be allowed to continue to be qualified as a Qualified Professional Asset Manager pursuant to Prohibited Transactions Exemption 84-14.  The

defendant will seek such exemption in an expeditious manner and will provide all information requested of it by the Department of Labor in a timely manner. The decision regarding whether or not to grant an exemption, temporary or otherwise, is committed to the Department of Labor, and the United States takes no position on whether or not an exemption should be granted; however, if requested, the United States will advise the Department of Labor of the fact, manner, and extent of the cooperation of the defendant and its Related Entities, as defined in Paragraph 16 of this Plea Agreement, and the relevant facts regarding the charged conduct. If the Department of Labor denies the exemption, or takes any other action adverse to the defendant or its Related Entities, the defendant may not withdraw its plea or otherwise be released from any of its obligations under this Plea Agreement. The United States agrees that it will support a motion or request by the defendant that sentencing in this matter be adjourned until the Department of Labor has issued a ruling on the defendant's request for an exemption, temporary or otherwise, so long as the defendant is proceeding with the Department of Labor in an expeditious manner. To the extent that this Plea Agreement triggers other regulatory exclusions, disqualifications, or penalties, the United States likewise agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action, or any waiver or exemption therefrom, of the fact, manner, and extent of the cooperation of the defendant and its Related Entities and the relevant facts regarding the charged conduct as a matter for that agency to consider before determining what action, if any, to take.

14.     Subject to the full, truthful, and continuing cooperation of the defendant and its Related Entities, and prior to sentencing in this case, the United States will fully advise the Court of the fact, manner, and extent of the defendant's and its Related Entities' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

15.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence provided for in Paragraph 9 of this Plea Agreement.

(a)     If the Court does not accept the Recommended Sentence, the United States and the defendant agree that this Plea Agreement, except for subparagraph 15(b) below, will be rendered void.

(b)     If the Court does not accept the Recommended Sentence, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the United States will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 17 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.

## **DEFENDANT'S COOPERATION**

16.     The defendant and its Related Entities will cooperate fully and truthfully with the United States in the investigation and prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the trading of foreign currency (spot, forward, option, or any other FX product), in the United States and elsewhere, and any litigation or any proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding").  Federal Proceeding includes, but is not

12

limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding.  The defendant's Related Entities for purposes of this Plea Agreement are: (i) BNP Paribas S.A., the Paris-based parent of the defendant; and (ii) entities in which the defendant or BNP Paribas S.A. had a greater than 50% ownership interest as of the date of the signature of this Plea Agreement, including but not limited to BNP Paribas Securities Corp.  The full, truthful, and continuing cooperation of the defendant and its Related Entities shall include, but not be limited to:

      (a)      producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendant and its Related Entities, that are requested by the United States in connection with any Federal Proceeding; and

      (b)      using its best efforts to secure the full, truthful, and continuing cooperation of the current and former directors, officers, and employees of the defendant and its Related Entities, as may be requested by the United States, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.  Cooperation under this paragraph shall include identification of witnesses who, to the knowledge of the defendant and its Related Entities, may have material information regarding the matters under investigation.

### GOVERNMENT'S AGREEMENT

17.     Subject to the full, truthful, and continuing cooperation of the defendant and its Related Entities, and upon the Court's acceptance of the guilty plea called for by this Plea

Agreement and the imposition of the Recommended Sentence, the United States agrees that it will not bring further criminal charges against the defendant or any of its Related Entities for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of a combination and conspiracy to suppress and eliminate competition in the trading of foreign currency (spot, forward, option, or any other FX product).  The nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

18.     The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take.  However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant and its Related Entities as a matter for that agency to consider before determining what action, if any, to take.  The defendant nevertheless affirms that it wants to plead guilty regardless of any suspension or debarment consequences of its plea.

## **REPRESENTATION BY COUNSEL**

19.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation.  The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

## VOLUNTARY PLEA

20.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its Related Entities has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 16 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its Related Entities will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its Related Entities for any offense referred to in Paragraph 17 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.     The defendant understands and agrees that in any further prosecution of it or any of its Related Entities resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's or any of its Related Entities'

violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its Related Entities, or current or former directors, officers, or employees of it or its Related Entities to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its Related Entities. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.      A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**AGREED:**

Dated:  January 18, 2018

BY: _____

Peter Cooke, Esq.
General Counsel
BNP Paribas USA, Inc.


BY: _____

David Esseks, Esq.
Rebecca Delfiner, Esq.
Allen & Overy LLP
Counsel for BNP Paribas USA, Inc.


Dated:  January 19, 2018

JEFFREY D. MARTINO
Chief, New York Office
Antitrust Division
U.S. Department of Justice


BY: _____

        Benjamin Sirota
        David Chu
        Eric Hoffmann
        Bryan Serino
        Grace Pyun

Trial Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, New York 10278
212-335-8000

### Unanimous Written Consent of the Board of Directors in Lieu of a Meeting of

### BNP PARIBAS USA, INC.

### Approval to Enter into Plea Agreement with the Department of Justice

The undersigned, being all of the members of the Board of Directors (the "Board of Directors" or "Directors") of BNP Paribas USA, Inc., a Delaware corporation (the "Corporation"), in lieu of acting at a meeting of the Board of Directors, hereby adopt the following resolutions by unanimous written consent pursuant to the Bylaws of the Corporation and Section 141(f) of the Delaware General Corporation Law:

**WHEREAS**, in light of the conduct of a former employee of BNP Paribas Securities Corp., an indirect wholly owned subsidiary of the Corporation, the United States Department of Justice (the "DOJ") has proposed that the Corporation enter a plea of guilty to a one count criminal information charging a violation of Section 1 of the Sherman Antitrust Act;

**WHEREAS**, the Corporation became an intermediate holding company in July 2016 as required by the Federal Reserve's Regulation YY and at such time and thereafter elected the current independent directors, who had no role at the Corporation before July 2016;

**WHEREAS**, the DOJ has stated that it will agree that the sentence recommended to be imposed on the Corporation by the Court will be a fine of $90 million and that no probationary term will be included in the sentence;

**WHEREAS**, the DOJ proposes to recognize at the time of the plea and in its sentencing memorandum the remediation efforts of BNP Paribas S.A. and its subsidiaries ("BNPP") with respect to their worldwide foreign exchange market business;

**WHEREAS**, BNP Paribas S.A., the parent and sole shareholder of the Corporation, has informed the Corporation that it would be in the interest of BNPP as a whole for the Corporation to plead guilty substantially in accordance with the proposed terms;

**WHEREAS**, therefore BNP Paribas S.A. has asked the Corporation to agree to plead guilty; and

**WHEREAS**, the Board of Directors has been advised of the contents of (i) the Information, a copy of which is attached hereto as Exhibit A (the "Information"); (ii) the proposed Waiver of Indictment, a copy of the proposed form of which is attached hereto as Exhibit B (the "Waiver of Indictment"); and the proposed Plea Agreement, a copy of the proposed form of which is attached hereto as Exhibit C (the "Plea Agreement"), each in the matter of United States of America versus BNP Paribas USA, Inc.; consulted with legal counsel in connection with this matter; and deems it advisable and in the best interest of the Corporation to execute the Waiver of Indictment, to enter into the proposed Plea Agreement, to admit to the factual basis for the charged offense stated in the Plea Agreement, and to authorize the Corporation to plead guilty to the charge specified in the Information;

**NOW THEREFORE BE IT:**

**RESOLVED**, that the Corporation hereby agrees in principle with the DOJ's proposal that it plead guilty; and further

**RESOLVED**, that the form of each of the Waiver of Indictment and Plea Agreement attached hereto be, and hereby is, approved and that the General Counsel be, and he hereby is, authorized, empowered and directed, in the name and on behalf of the Corporation, to execute and deliver such documents, with such changes and with such other terms and conditions as he may by such execution and delivery approve, such approval and the authority therefor to be conclusively evidenced by such execution and delivery; and to delegate such authority to such other officers of the Corporation as he deems advisable, appropriate and in the best interests of the Corporation; and further

**RESOLVED**, that each of the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer and General Counsel (each an "Authorized Person") be, and each of them hereby is, authorized, empowered and directed to take, in the name of and on behalf of the Corporation, any and all actions, including without limitation, the making of appearances in court or otherwise, the execution, acknowledgement, filing, amendment and delivery of any and all papers, agreements, documents, instruments and certificates, and the payment of such sums (including without limitation to satisfy obligations set forth in the Plea Agreement and to pay expenses related thereto) as such officers may deem necessary or advisable to carry out and perform the obligations of the Corporation in connection with the Plea Agreement or otherwise to effectuate the purpose and intent of the foregoing resolutions; and that execution by any such individual referred to in the foregoing resolution of such paper, agreement, document, instrument or certificate or the doing by any of them of any action in connection with the foregoing matters shall establish conclusively their authority therefor from the Corporation and the approval and ratification by the Corporation of such paper, agreement, document, instrument or certificate and the actions so taken; and further

**RESOLVED**, that each Authorized Person be, and each of them hereby is, authorized, empowered and directed to take, in the name of and on behalf of the Corporation, any and all actions, including without limitation, the execution, acknowledgement, filing, amendment and delivery of any and all papers, agreements, documents, instruments and certificates as such officers may deem necessary or advisable in respect of any potential or actual consequence the Plea Agreement (or any related matter) may have on the business or status of the Corporation, including without limitation, an application for a Prohibited Transaction Exemption from the U.S. Department of Labor and an application pursuant to Section 9(c) of the Investment Company Act of 1940 (each, a "Potential Consequence"); and that execution by any Authorized Person of such paper, agreement, document, instrument or certificate or the doing by any of them of any action in connection with a Potential Consequence shall establish conclusively their authority therefor from the Corporation and the approval and ratification by the Corporation of such paper, agreement, document, instrument or certificate and the actions so taken; and further

**RESOLVED**, that all actions heretofore taken by the directors, officers and agents of the Corporation in connection with the Plea Agreement be, and they hereby are, authorized, ratified and confirmed in all respects as the acts and deeds of the Corporation; and further

**RESOLVED**, that the presence or absence of the seal of the Corporation shall not affect the validity or binding effect upon the Corporation of any signature affixed in accordance with the foregoing resolutions; and further

**RESOLVED**, that the Secretary or an Assistant Secretary of the Corporation be, and each of them hereby is, authorized and directed to certify a copy of these resolutions, and from time to time to execute a certificate or certificates of incumbency and specimen signatures of the persons authorized to take actions and execute documents pursuant to the foregoing resolutions and to deliver such certified copy of such certificate or certificates and specimen signatures to the appropriate party or parties.

This written consent shall be effective when signed by the undersigned and filed in the minute book of the Corporation whereupon it shall constitute the act of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned have executed this written consent effective as of July 20, 2017 (which may be executed in counterparts).

Michael Shepherd, Chairman

Nandita Bakhshi

Amy Butte

Stefaan Decraene

Michael Drake

Jean-Yves Fillion

Gérard Gil

Alan Krueger

Yves Martrenchar

Jean-Marc Moriani

Eric Martin

Alain Papiasse

Frank Roncey

Tim Taylor

RESOLVED, that the Secretary or an Assistant Secretary of the Corporation be, and each of them hereby is, authorized and directed to certify a copy of these resolutions, and from time to time to execute a certificate or certificates of incumbency and specimen signatures of the persons authorized to take actions and execute documents pursuant to the foregoing resolutions and to deliver such certified copy of such certificate or certificates and specimen signatures to the appropriate party or parties.

This written consent shall be effective when signed by the undersigned and filed in the minute book of the Corporation whereupon it shall constitute the act of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned have executed this written consent effective as of July 20, 2017 (which may be executed in counterparts).


Michael Shepherd, Chairman

Nandita Bakhshi


Amy Butte

Stefaan Decraene


Michael Drake

Jean-Yves Fillion


Gérard Gil

Alan Krueger


Yves Martrenchar

Jean-Marc Moriani


Eric Martin

Alain Papiasse


Frank Roncey

Tim Taylor

**RESOLVED**, that the Secretary or an Assistant Secretary of the Corporation be, and each of them hereby is, authorized and directed to certify a copy of these resolutions, and from time to time to execute a certificate or certificates of incumbency and specimen signatures of the persons authorized to take actions and execute documents pursuant to the foregoing resolutions and to deliver such certified copy of such certificate or certificates and specimen signatures to the appropriate party or parties.

This written consent shall be effective when signed by the undersigned and filed in the minute book of the Corporation whereupon it shall constitute the act of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned have executed this written consent effective as of July 20, 2017 (which may be executed in counterparts).


Michael Shepherd, Chairman                    Nandita Bakhshi


Amy Butte                                      Stefaan Decraene


Michael Drake                                  Jean-Yves Fillion


Gérard Gil                                     Alan Krueger


Yves Martrenchar                               Jean-Marc Moriani


Eric Martin                                    Alain Papiasse


Frank Roncey                                   Tim Taylor

**RESOLVED**, that the Secretary or an Assistant Secretary of the Corporation be, and each of them hereby is, authorized and directed to certify a copy of these resolutions, and from time to time to execute a certificate or certificates of incumbency and specimen signatures of the persons authorized to take actions and execute documents pursuant to the foregoing resolutions and to deliver such certified copy of such certificate or certificates and specimen signatures to the appropriate party or parties.

This written consent shall be effective when signed by the undersigned and filed in the minute book of the Corporation whereupon it shall constitute the act of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned have executed this written consent effective as of July 20, 2017 (which may be executed in counterparts).


_____
Michael Shepherd, Chairman

_____
Nandita Bakhshi


_____
Amy Butte

_____
Stefaan Decraene


_____
Michael Drake

_____
Jean-Yves Fillion


_____
Gérard Gil

_____
Alan Krueger


_____
Yves Martrenchar

_____
Jean-Marc Moriani


_____
Eric Martin

_____
Alain Papiasse


_____
Frank Roncey

_____
Tim Taylor

**RESOLVED**, that the Secretary or an Assistant Secretary of the Corporation be, and each of them hereby is, authorized and directed to certify a copy of these resolutions, and from time to time to execute a certificate or certificates of incumbency and specimen signatures of the persons authorized to take actions and execute documents pursuant to the foregoing resolutions and to deliver such certified copy of such certificate or certificates and specimen signatures to the appropriate party or parties.

This written consent shall be effective when signed by the undersigned and filed in the minute book of the Corporation whereupon it shall constitute the act of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned have executed this written consent effective as of July 20, 2017 (which may be executed in counterparts).


_____
Michael Shepherd, Chairman

_____
Nandita Bakhshi


_____
Amy Butte

_____
Stefaan Decraene


_____
Michael Drake

_____
Jean-Yves Fillion


_____
Gérard Gil

_____
Alan Krueger


_____
Yves Martrenchar

_____
Jean-Marc Moriani


_____
Eric Martin

_____
Alain Papiasse


_____
Frank Roncey

_____
Tim Taylor

**RESOLVED**, that the Secretary or an Assistant Secretary of the Corporation be, and each of them hereby is, authorized and directed to certify a copy of these resolutions, and from time to time to execute a certificate or certificates of incumbency and specimen signatures of the persons authorized to take actions and execute documents pursuant to the foregoing resolutions and to deliver such certified copy of such certificate or certificates and specimen signatures to the appropriate party or parties.

This written consent shall be effective when signed by the undersigned and filed in the minute book of the Corporation whereupon it shall constitute the act of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned have executed this written consent effective as of July 20, 2017 (which may be executed in counterparts).

_____
Michael Shepherd, Chairman

_____
Nandita Bakhshi

_____
Amy Butte

_____
Stefaan Decraene

_____
Michael Drake

_____
Jean-Yves Fillion

_____
Gérard Gil

_____
Alan Krueger

_____
Yves Martrenchar

_____
Jean-Marc Moriani

_____
Eric Martin

_____
Alain Papiasse

_____
Frank Roncey

_____
Tim Taylor

EXHIBIT A

ATR DRAFT – JULY 10, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- x
                                                         :
UNITED STATES OF AMERICA                                 :      Criminal No.
                                                         :
          v.                                             :      Filed:
                                                         :
BNP PARIBAS USA, INC.,                                   :      Violation: 15 U.S.C. § 1
                                                         :
          Defendant.                                     :
-------------------------------------------------------- x
```

## INFORMATION

The United States of America, acting through its attorneys, charges:

## SHERMAN ACT CONSPIRACY
### (15 U.S.C. § 1)

## DEFENDANT AND CO-CONSPIRATORS

At all relevant times, unless otherwise specified:

1.    BNP Paribas USA, Inc. ("Defendant") is a U.S. banking and financial services holding company organized under the laws of Delaware with its headquarters in New York, New York. Defendant was, during the Relevant Period (defined in paragraph 10 below), named Paribas North America, Inc., and was the U.S. holding company for the U.S. Corporate and Investment Banking operations of BNP Paribas S.A., the Paris-based parent company. Defendant was designated as the intermediate holding company for the U.S. businesses of BNP Paribas S.A. as required by the Federal Reserve's Regulation YY in July 2016, after the Relevant Period, and at such time and thereafter elected its current independent directors.

1

ATR DRAFT – JULY 10, 2017

2.      Various financial institutions and individuals, not made defendants in this Information, participated as co-conspirators in the offense charged in this Information and performed acts and made statements in furtherance thereof.

3.      Whenever in this Information reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## BACKGROUND

4.      The foreign currency exchange ("FX") market is a global market in which participants trade currencies, in pairs. In a currency pair, each currency is valued relative to the other. The ratio that expresses the value of one currency to the other is referred to as the "exchange rate," "rate," or simply "price." Trading in Central and Eastern European, Middle Eastern, and African ("CEEMEA") currencies typically involves exchanging one CEEMEA currency, such as the South African Rand ("ZAR"), for a non-CEEMEA currency, such as the U.S. Dollar ("USD"). In the currency pair USD/ZAR, USD is referred to as the "base" currency and ZAR is referred to as the "counter" currency. Prices are quoted in terms of how many units of the counter currency are required in exchange for a stated amount of the base currency.

ATR DRAFT – JULY 10, 2017

5.      FX transactions include "spot" transactions, in which the exchange of currencies occurs typically within two days of the trade date, and "forward" transactions, in which the exchange of currencies occurs on a more distant, agreed-upon date following the trade date.

6.      FX dealers, also known as FX market makers, are financial institutions that quote prices to buy and sell currencies to customers looking to trade.  Customers include corporations, hedge funds, pension funds, and other entities, located in New York, other states, and in foreign countries, that want to exchange large amounts of one currency into an equivalent amount of another currency.  Prices for such transactions are typically conveyed to these customers in the form of a "two-way price" quote, comprised of the "bid" (the price at which the FX dealer will buy the base currency) and the "offer" (the price at which the FX dealer will sell the base currency).

7.      One category of customer order is an order to buy or sell a specific amount of currency at the price quoted by the FX dealer.  Another category of customer order is a "fix" order, where the order is to buy or sell a specific amount of currency at a benchmark rate to be determined subsequently.  "Fixes" establish such benchmark rates by generating a snapshot of the price of a currency pair based on market activity for that currency pair occurring within a predetermined, and short, window of time.  A third category of customer order is known as a "limit" order.  In a limit order, a customer

3

ATR DRAFT – JULY 10, 2017

places an order to buy or sell a particular currency only if the market price of that currency reaches or exceeds a set price level.

    8.    Once the FX dealer and the customer agree on price for a particular type of customer order, the FX dealer then assumes the risk of an unfavorable movement in price of the quoted currency pair that might occur between the time the FX dealer and the customer enter into their trade and when the FX dealer is able to fill or offset that customer trade in what is known as the "interdealer market." Interdealer trades can be executed directly between competing FX dealers, through brokers, or on electronic FX trading platforms.

    9.    During the Relevant Period, Defendant acted as an FX dealer, in the United States and elsewhere, for CEEMEA currencies, and for both spot and forward transactions.

## DESCRIPTION OF THE OFFENSE

    10.    From at least as early as September 2011 and continuing until at least July 2013 ("Relevant Period"), the exact dates being unknown to the United States, in the Southern District of New York and elsewhere, Defendant and its co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices for CEEMEA currencies traded in the United States and elsewhere. The combination and conspiracy engaged in by Defendant and its co-conspirators was in

ATR DRAFT – JULY 10, 2017

unreasonable restraint of interstate and U.S. import trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

11.    The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and its co-conspirators, the substantial terms of which were to fix prices for CEEMEA currencies traded in the United States and elsewhere.

## MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

12.    For the purposes of forming and carrying out the charged combination and conspiracy, Defendant and its co-conspirators did those things which they combined and conspired to do, including, among other things:

(a)    agreeing to enter into non-bona fide trades among themselves on an electronic FX trading platform, for the sole purpose of manipulating prices;

(b)    agreeing to subsequently cancel these non-bona fide trades, or to offset them by entering into equivalent trades in the opposite direction, in a manner designed to hide such actions from other FX market participants;

(c)    coordinating on the price, size, and timing of their bids and offers on an electronic FX trading platform in order to manipulate prices on that and other electronic FX trading platforms;

(d)    agreeing to refrain from trading where one or more of the co-conspirators had a stronger need to buy or sell than the others, in order to prevent

5

the co-conspirators from bidding up the price or offering down the price against each other;

(c)     coordinating their trading prior to and during fixes in a manner intended to manipulate final fix prices;

(f)     coordinating their trading in order to move pricing through their customers' limit order levels;

(g)     agreeing on pricing to quote to specific customers;

(h)     engaging in the above-described behavior by communicating through private chat rooms, phone calls, text messages, other personal cell phone applications, and in-person meetings within the Southern District of New York, among other means of communication; and

(i)     employing measures to hide their coordinated conduct from customers as well as other FX market participants, including by using code names for specific customers, communicating by personal cell phone applications instead of on recorded business phone lines, and concealing the existence of trades entered into solely to manipulate prices, among other steps.

## TRADE AND COMMERCE

13.     During the Relevant Period, the business activities of Defendant and its co-conspirators that are the subject of this Information were within the flow of, and substantially affected, interstate and U.S. import trade and commerce. Defendant and its

ATR DRAFT – JULY 10, 2017

co-conspirators filled substantial quantities of CEEMEA customer orders, and traded substantial quantities of CEEMEA currencies in the interdealer market, with customers and counterparties located in New York, in other states, and in foreign countries, in a continuous and uninterrupted flow of interstate and U.S. import trade and commerce. Defendant and its co-conspirators also caused substantial payments for FX transactions to travel in interstate and U.S. import trade and commerce.

   ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated:

_____
MARVIN N. PRICE, Jr.
Acting Deputy Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____
JEFFREY D. MARTINO
Chief, New York Office
Antitrust Division
U.S. Department of Justice

_____
JOON H. KIM
Acting United States Attorney
Southern District of New York

_____
JOSEPH MUOIO
Assistant Chief, New York Office
Antitrust Division
U.S. Department of Justice

_____
BENJAMIN SIROTA
DAVID CHU
ERIC HOFFMANN
BRYAN SERINO
GRACE PYUN

Trial Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, New York 10278
212-335-8000

7

EXHIBIT B

ATR DRAFT – as of JULY 10, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                :
UNITED STATES OF AMERICA         :
                                :
             v.               :         17 Cr.
                                :
BNP PARIBAS USA, INC.,        :
                                :
          Defendant.      :
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

The above-named defendant, which is accused of violating Title 15, United States Code, Section 1, being advised of the nature of the charge and of its rights, hereby waives in open court prosecution by indictment and consents that the proceeding may be by information instead of by indictment.

<br>

                                  _____
                                    Defendant BNP Paribas USA, Inc.
                                    By: [XXXXX]

<br>

                                  _____
                                    Counsel for Defendant BNP Paribas USA, Inc.
                                    David Esseks, Esq.

<br>

Date:  July [XX], 2017
       New York, New York

EXHIBIT C

ATR DRAFT, as of JULY 10, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------x
                                          :
UNITED STATES OF AMERICA                  :      Criminal No.
                                          :
        v.                                :      Filed:
                                          :
BNP PARIBAS USA, INC.,                    :      Violation: 15 U.S.C. § 1
                                          :
                    Defendant.            :
---------------------------------------------------------x
```

### PLEA AGREEMENT

The United States of America and BNP Paribas USA, Inc. ("defendant"), a U.S. banking and financial services holding company organized and existing under the laws of Delaware, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). The defendant was, during the Relevant Period (defined in paragraph 4 below), named Paribas North America, Inc., and was the U.S. holding company for the U.S. Corporate and Investment Banking operations of BNP Paribas S.A., the Paris-based parent company. The defendant was designated as the intermediate holding company for the U.S. businesses of BNP Paribas S.A. as required by the Federal Reserve's Regulation YY in July 2016, after the Relevant Period, and at such time and thereafter elected its current independent directors.

### RIGHTS OF DEFENDANT

1.    The defendant understands its rights:

    (a)    to be represented by an attorney;

    (b)    to be charged by Indictment;

    (c)    as a corporation organized and existing under the laws of Delaware, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Southern District of New York;

ATR DRAFT, as of JULY 10, 2017

    (d)  to plead not guilty to any criminal charge brought against it;

    (e)  to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

    (f)  to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

    (g)  to appeal its conviction if it is found guilty; and

    (h)  to appeal the imposition of sentence against it.

### AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

  2.  The defendant knowingly and voluntarily waives the rights set out in subparagraphs 1(b)-(g) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the Recommended Sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. For purposes of the waiver of appeal, the sentence imposed is deemed consistent with or below the Recommended Sentence in Paragraph 9 even if the sentence imposed includes a term of probation if it is otherwise consistent with or below the Recommended Sentence in Paragraph 9, unless the term of probation exceeds the length authorized by 18 U.S.C. § 3561(c). This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the Southern District of New York.

2

ATR DRAFT, as of JULY 10, 2017

The Information will charge the defendant with entering into and engaging in a combination and conspiracy to suppress and eliminate competition by fixing prices for Central and Eastern European, Middle Eastern, and African ("CEEMEA") currencies traded in the United States and elsewhere, from at least as early as September 2011 and continuing until at least July 2013, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.      The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

FACTUAL BASIS FOR OFFENSE CHARGED

4.      Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)      For purposes of this Plea Agreement, the "Relevant Period" is that period from at least as early as September 2011 and continuing until at least July 2013.

(b)      The foreign currency exchange ("FX") market is a global market in which participants trade currencies, in pairs. In a currency pair, each currency is valued relative to the other. The ratio that expresses the value of one currency to the other is referred to as the "exchange rate," "rate," or simply "price." Trading in CEEMEA currencies typically involves exchanging one CEEMEA currency, such as the South African Rand ("ZAR"), for a non-CEEMEA currency, such as the U.S. Dollar ("USD"). In the currency pair USD/ZAR, USD is referred to as the "base" currency and ZAR is referred to as the "counter" currency. Prices are quoted in terms of how many units of the counter currency are required in exchange for a stated amount of the base currency.

(c)      FX transactions include "spot" transactions, in which the exchange of currencies occurs typically within two days of the trade date, and "forward" transactions, in which the exchange of currencies occurs on a more distant, agreed-upon date following the trade date.

3

ATR DRAFT, as of JULY 10, 2017

(d)     FX dealers, also known as FX market makers, are financial institutions that quote prices to buy and sell currencies to customers looking to trade.  Customers include corporations, hedge funds, pension funds, and other entities, located in New York, other states, and in foreign countries, that want to exchange large amounts of one currency into an equivalent amount of another currency.  Prices for such transactions are typically conveyed to these customers in the form of a "two-way price" quote, comprised of the "bid" (the price at which the FX dealer will buy the base currency) and the "offer" (the price at which the FX dealer will sell the base currency).

(e)     One category of customer order is an order to buy or sell a specific amount of currency at the price quoted by the FX dealer.  Another category of customer order is a "fix" order, where the order is to buy or sell a specific amount of currency at a benchmark rate to be determined subsequently.  "Fixes" establish such benchmark rates by generating a snapshot of the price of a currency pair based on market activity for that currency pair occurring within a predetermined, and short, window of time.  A third category of customer order is known as a "limit" order.  In a limit order, a customer places an order to buy or sell a particular currency only if the market price of that currency reaches or exceeds a set price level.

(f)     Once the FX dealer and the customer agree on price for a particular type of customer order, the FX dealer then assumes the risk of an unfavorable movement in price of the quoted currency pair that might occur between the time the FX dealer and the customer enter into their trade and when the FX dealer is able to fill or offset that customer trade in what is known as the "interdealer market."  Interdealer trades can be executed directly between competing FX dealers, through brokers, or on electronic FX trading platforms.

(g)     During the Relevant Period, the defendant and certain of its Related Entities, as defined in Paragraph 16 of this Plea Agreement, employing more than 5,000

4

individuals worldwide, acted as an FX dealer, in the United States and elsewhere, for
CEEMEA currencies, and for both spot and forward transactions.

    (h)    During the Relevant Period, the defendant and its corporate co-
conspirators, which were also financial institutions acting as competing FX dealers,
entered into and engaged in a combination and conspiracy to suppress and eliminate
competition by fixing prices for CEEMEA currencies traded in the United States and
elsewhere. The defendant, through one of its CEEMEA traders, participated in the
conspiracy from at least as early as September 2011 and continuing until at least July
2013.

    (i)    In furtherance of the conspiracy, the defendant and its co-conspirators
engaged in communications, including near daily conversations, through private chat
rooms, phone calls, text messages, other personal cell phone applications, and in-person
meetings within the Southern District of New York, among other means of
communication.

    (j)    The defendant and its co-conspirators carried out the conspiracy to
suppress and eliminate competition in CEEMEA currencies by various means and
methods, including by: (i) agreeing to enter into non-bona fide trades among themselves
on an electronic FX trading platform, for the sole purpose of manipulating prices; (ii)
agreeing to subsequently cancel these non-bona fide trades, or to offset them by entering
into equivalent trades in the opposite direction, in a manner designed to hide such actions
from other FX market participants; (iii) coordinating on the price, size, and timing of
their bids and offers on an electronic FX trading platform in order to manipulate prices on
that and other electronic FX trading platforms; (iv) agreeing to refrain from trading where
one or more of the co-conspirators had a stronger need to buy or sell than the others, in
order to prevent the co-conspirators from bidding up the price or offering down the price
against each other; (v) coordinating their trading prior to and during fixes in a manner

ATR DRAFT, as of JULY 10, 2017

intended to manipulate final fix prices; (vi) coordinating their trading in order to move pricing through their customers' limit order levels; (vii) agreeing on pricing to quote to specific customers; and (viii) employing measures to hide their coordinated conduct from customers as well as other FX market participants, including by using code names for specific customers, communicating by personal cell phone applications instead of on recorded business phone lines, and concealing the existence of trades entered into solely to manipulate prices, among other steps.

(k)    During the Relevant Period, the business activities of the defendant and its co-conspirators that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and U.S. import trade and commerce. The defendant and its co-conspirators filled substantial quantities of CEEMEA customer orders, and traded substantial quantities of CEEMEA currencies in the interdealer market, with customers and counterparties located in New York, in other states, and in foreign countries, in a continuous and uninterrupted flow of interstate and U.S. import trade and commerce. The defendant and its co-conspirators also caused substantial payments for FX transactions to travel in interstate and U.S. import trade and commerce.

(l)    Acts in furtherance of the charged offense were carried out within the Southern District of New York and elsewhere.

### ELEMENTS OF THE OFFENSE

5.    The elements of the charged offense are that:

(a)    the conspiracy described in the Information existed at or about the time alleged;

(b)    the defendant knowingly became a member of the conspiracy; and

(c)    the conspiracy described in the Information either substantially affected interstate and U.S. import commerce in goods or services or occurred within the flow of interstate and U.S. import commerce in goods and services.

6

ATR DRAFT, as of JULY 10, 2017

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

      (a)     $100 million (15 U.S.C. § 1);

      (b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

      (c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendant understands that:

      (a)     pursuant to §8D1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines")  or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

      (b)     pursuant to U.S.S.G. §8B1.1 or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

      (c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue under the November 1, 2016 Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant

7

ATR DRAFT, as of JULY 10, 2017

understands that the Court will make Guidelines determinations by applying a standard of
preponderance of the evidence. The defendant understands that although the Court is not
ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must
be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. §
3553(a).

SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and
continuing cooperation of the defendant and its Related Entities, the United States and the
defendant agree that the appropriate disposition of this case is, and agree to recommend jointly
that the Court impose, a sentence within the applicable Guidelines range requiring the defendant
to pay to the United States a criminal fine of $90 million, payable in full before the fifteenth
(15th) day after the date of judgment, and no order of restitution (the "Recommended
Sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a
kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission
in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.
The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines
range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement.
The parties further agree that the Recommended Sentence set forth in this Plea Agreement is
reasonable.

(a)      The defendant understands that the Court will order it to pay a $400
special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine
imposed.

(b)      In light of the availability of civil causes of action, as evidenced by civil
cases already filed against certain of the defendant's Related Entities, including *In re
Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789-LGS (S.D.N.Y.),
the Recommended Sentence does not include a restitution order for the offense charged

8

ATR DRAFT, as of JULY 10, 2017

in the Information. If the Court rejects the recommendation for no order of restitution, the United States and the defendant agree that this plea agreement, except for subparagraph 15(b) below, will be rendered void and the defendant will be free to withdraw its guilty plea as provided in subparagraph 15(b).

(c)     Both parties will recommend that no term of probation be imposed in this case, in considering, among other factors, the substantial efforts to address the defendant's and its Related Entities' compliance and remediation program to prevent recurrence of the charged offense, and the five-year term of probation imposed upon BNP Paribas S.A. on May 1, 2015 in the unrelated case of *United States v. BNP Paribas S.A.*, 14-cr-460-LGS (S.D.N.Y.). The defendant understands that the Court's denial of this request will not void this Plea Agreement.

(d)     The defendant agrees to waive its right to the issuance of a Presentence Investigation Report pursuant to Fed. R. Crim. P. 32 and the defendant and the United States agree that the information contained in this Plea Agreement and the Information may be sufficient to enable the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, pursuant to Fed. R. Crim. P. 32(c)(1)(A)(ii). Except as set forth in this Plea Agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments.

10.     The defendant and its Related Entities shall further strengthen their compliance and internal controls as required by the Federal Reserve, the New York Department of Financial Services, and any other regulatory or enforcement agencies that have addressed the conduct set forth in Paragraph 4 (h)-(j) above, and provide a report to the United States one year after execution of this agreement, and thereafter upon the United States' request, regarding their remediation and implementation of any compliance program and internal controls, policies, and procedures that relate to the conduct described in Paragraph 4 (h)-(j) above. Moreover, the defendant agrees that it has no objection to any regulatory agencies providing to the United

9

ATR DRAFT, as of JULY 10, 2017

States any information or reports generated by such agencies or by the defendant or its Related Entities relating to conduct described in Paragraph 4 (h)-(j) above. Such information and reports will likely include proprietary, financial, confidential, and competitive business information, and public disclosure of the information and reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the objective of the United States in obtaining such reports. For these reasons, among others, the information and reports and the contents thereof are intended to remain and shall remain nonpublic, except as otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of the United States' discharge of its duties and responsibilities or is otherwise required by law.

11.     For a period of three years from the date of execution of this Plea Agreement, the defendant shall report to the Antitrust Division all credible information regarding criminal violations of U.S. antitrust laws by the defendant, its Related Entities, or any of their employees as to which the defendant's or its Related Entities' boards of directors, management (that is, all supervisors within the bank), or legal and compliance personnel are aware.

12.     For a period of three years from the date of execution of this Plea Agreement, the defendant shall bring to the Antitrust Division's attention all federal criminal investigations in which the defendant or any of its Related Entities is identified as a subject or a target, and all administrative or regulatory proceedings or civil actions brought by any federal or state governmental authority in the United States against the defendant, its Related Entities, or their employees, to the extent that such investigations, proceedings, or actions allege facts that could form the basis of a criminal violation of U.S. antitrust laws.

13.     The defendant intends to file an application for a prohibited transaction exemption with the United States Department of Labor ("Department of Labor") requesting that the defendant and its Related Entities be allowed to continue to be qualified as a Qualified Professional Asset Manager pursuant to Prohibited Transactions Exemption 84-14. The

ATR DRAFT, as of JULY 10, 2017

defendant will seek such exemption in an expeditious manner and will provide all information requested of it by the Department of Labor in a timely manner. The decision regarding whether or not to grant an exemption, temporary or otherwise, is committed to the Department of Labor, and the United States takes no position on whether or not an exemption should be granted; however, if requested, the United States will advise the Department of Labor of the fact, manner, and extent of the cooperation of the defendant and its Related Entities, as defined in Paragraph 16 of this Plea Agreement, and the relevant facts regarding the charged conduct. If the Department of Labor denies the exemption, or takes any other action adverse to the defendant or its Related Entities, the defendant may not withdraw its plea or otherwise be released from any of its obligations under this Plea Agreement. The United States agrees that it will support a motion or request by the defendant that sentencing in this matter be adjourned until the Department of Labor has issued a ruling on the defendant's request for an exemption, temporary or otherwise, so long as the defendant is proceeding with the Department of Labor in an expeditious manner. To the extent that this Plea Agreement triggers other regulatory exclusions, disqualifications, or penalties, the United States likewise agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action, or any waiver or exemption therefrom, of the fact, manner, and extent of the cooperation of the defendant and its Related Entities and the relevant facts regarding the charged conduct as a matter for that agency to consider before determining what action, if any, to take.

14.     Subject to the full, truthful, and continuing cooperation of the defendant and its Related Entities, and prior to sentencing in this case, the United States will fully advise the Court of the fact, manner, and extent of the defendant's and its Related Entities' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

11

ATR DRAFT, as of JULY 10, 2017

15.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence provided for in Paragraph 9 of this Plea Agreement.

(a)     If the Court does not accept the Recommended Sentence, the United States and the defendant agree that this Plea Agreement, except for subparagraph 15(b) below, will be rendered void.

(b)     If the Court does not accept the Recommended Sentence, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the United States will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 17 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.

## DEFENDANT'S COOPERATION

16.     The defendant and its Related Entities will cooperate fully and truthfully with the United States in the investigation and prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the trading of foreign currency (spot, forward, option, or any other FX product), in the United States and elsewhere, and any litigation or any proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not

ATR DRAFT, as of JULY 10, 2017

limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of,
the making of a false statement or declaration in, the commission of perjury or subornation of
perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal
Proceeding. The defendant's Related Entities for purposes of this Plea Agreement are: (i) BNP
Paribas S.A., the Paris-based parent of the defendant; and (ii) entities in which the defendant or
BNP Paribas S.A. had a greater than 50% ownership interest as of the date of the signature of
this Plea Agreement, including but not limited to BNP Paribas Securities Corp. The full,
truthful, and continuing cooperation of the defendant and its Related Entities shall include, but
not be limited to:

      (a)     producing to the United States all documents, information, and other
materials, wherever located, not protected under the attorney-client privilege or the work-
product doctrine, in the possession, custody, or control of the defendant and its Related
Entities, that are requested by the United States in connection with any Federal
Proceeding; and

      (b)     using its best efforts to secure the full, truthful, and continuing cooperation
of the current and former directors, officers, and employees of the defendant and its
Related Entities, as may be requested by the United States, including making these
persons available in the United States and at other mutually agreed-upon locations, at the
defendant's expense, for interviews and the provision of testimony in grand jury, trial,
and other judicial proceedings in connection with any Federal Proceeding. Cooperation
under this paragraph shall include identification of witnesses who, to the knowledge of
the defendant and its Related Entities, may have material information regarding the
matters under investigation.

## GOVERNMENT'S AGREEMENT

17.     Subject to the full, truthful, and continuing cooperation of the defendant and its
Related Entities, and upon the Court's acceptance of the guilty plea called for by this Plea

ATR DRAFT, as of JULY 10, 2017

Agreement and the imposition of the Recommended Sentence, the United States agrees that it will not bring further criminal charges against the defendant or any of its Related Entities for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of a combination and conspiracy to suppress and eliminate competition in the trading of foreign currency (spot, forward, option, or any other FX product). The nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

18.     The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take. However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant and its Related Entities as a matter for that agency to consider before determining what action, if any, to take. The defendant nevertheless affirms that it wants to plead guilty regardless of any suspension or debarment consequences of its plea.

### REPRESENTATION BY COUNSEL

19.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

ATR DRAFT, as of JULY 10, 2017

## VOLUNTARY PLEA

20.    The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21.    The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its Related Entities has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 16 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its Related Entities will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its Related Entities for any offense referred to in Paragraph 17 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.    The defendant understands and agrees that in any further prosecution of it or any of its Related Entities resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's or any of its Related Entities'

15

ATR DRAFT, as of JULY 10, 2017

violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its Related Entities, or current or former directors, officers, or employees of it or its Related Entities to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its Related Entities. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

16

ATR DRAFT, as of JULY 10, 2017

**AGREED:**

Dated:                                           Dated:

BY: _____          JEFFREY D. MARTINO
Peter Cooke, Esq.                           Chief, New York Office
General Counsel                             Antitrust Division
BNP Paribas USA, Inc.                    U.S. Department of Justice

BY: _____          BY: _____
David Esseks, Esq.                                  Benjamin Sirota
John Terzaken, Esq.                                David Chu
Rebecca Delfiner, Esq.                             Eric Hoffmann
Allen & Overy LLP                                   Bryan Serino
Counsel for BNP Paribas USA, Inc.          Grace Pyun

                                                    Trial Attorneys, Antitrust Division
                                                    U.S. Department of Justice
                                                    26 Federal Plaza, Room 3630
                                                    New York, New York 10278
                                                    212-335-8000

17